# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

MARK DANIEL GROSS,

      Plaintiff,

v.                                                          Case No.  8:05-CV-1767-27TBM

BOB WHITE, SHERIFF, PASCO COUNTY,
DR. T. McKAY, STATE OF FLORIDA, and
TWENTY-FIVE UNIDENTIFIED DEPUTY
SHERIFFS,

      Defendants.

_____/

## ORDER

Plaintiff, a prisoner proceeding *pro se*, initiated this cause of action by filing a civil rights complaint pursuant to 42 U.S.C. §1983 (Dkt. 1). Subsequently, Plaintiff filed an amended complaint (Dkt. 21), and an Amended Pretrial Brief which the Court construes as a memorandum of law in support of his amended complaint (Dkt. 22). The events about which Plaintiff complains occurred while he was incarcerated in the Pasco County Jail (hereafter "PCJ"). Plaintiff names: 1) Bob White, Sheriff, Pasco County, Florida; 2) Dr. T. McKay, a medical doctor; 3) the State of Florida; and 4) twenty-five (25) unnamed deputy sheriffs as defendants. Plaintiff seeks monetary relief. The Court finds, for reasons discussed below, that this cause of action should be dismissed as to Defendants White and State of Florida[1] prior to service of process for failure to state a claim for which relief may be granted.

_____

[1]On September 5, 2007, the Court directed the United States Marshal to serve process on Defendant McKay (Dkt. 33).

## Standard of Review

Because Plaintiff filed this action against a governmental entity while incarcerated, the Court is required to screen his action under 28 U.S.C. § 1915A(b). Section 1915A provides that:

> "[t]he court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. . . . On review, the court shall . . . dismiss the complaint, or any portion of the complaint, if the complaint – is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief."

28 U.S.C. § 1915A(a) and (b)(1) & (2). Section 1915A requires that prisoner complaints be screened in the same manner as under § 1915(e)(2)(B) where a governmental official has been sued regardless of whether the $350.00 filing fee has been paid. *Martin v. Scott*, 156 F.3d 578, 579 (5th Cir. 1998) (finding that § 1915A "applies to any suit by a prisoner against certain government officials or entities regardless of whether that prisoner is or is not proceeding IFP."), *cert. denied*, 527 U.S. 1041 (1999). The phrase "fails to state a claim upon which relief may be granted" has the same meaning as the nearly identical phrase in Federal Rule of Civil Procedure 12(b)(6). *See Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997) ("The language of section 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6), and we will apply Rule 12(b)(6) standards in reviewing dismissals under section 1915(e)(2)(B)(ii).").

## Discussion

In any § 1983 action, the initial inquiry must focus on whether two essential elements are present:

> (1) whether the person engaged in the conduct complained of was acting under color of state law; and (2) whether the alleged conduct deprived a person of rights, privileges or immunities guaranteed under the Constitution or laws of the United States.

2

*Duke v. Massey*, 87 F.3d 1226, 1231 (11th Cir. 1996) (citations omitted); *see also Hale v. Tallapoosa County*, 50 F.3d 1579 (11th Cir. 1995). In addition, for liability under 42 U.S.C. § 1983, Plaintiff must allege an affirmative causal connection between the defendant's conduct and the constitutional deprivation. *See Swint v. City of Wadley, Alabama*, 51 F.3d 988 (11th Cir. 1995); *Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994).

Plaintiff asserts the following claims in his amended complaint:

Statement of Claim:
My [Mark D. Gross] constitutional right to seek justice and redress, and my Eighth (8th) Amendment right for the 'gross negligence, cruel and unusual punishment, serious bodily injury, and professional malpractice' while under the 'care, custody, and control' of the above-cited Defendants, while being a 'Pretrial Detainee' [incarcerate] at the Pasco County Jail, located in Land O'Lakes, Florida, which is a lawfully constituted correctional institution.

Statement of Facts:[2]
On the morning of August 26, 2004, the Plaintiff was restrained [handcuffs, black box, belly chain, and leg shackles] and transported from the Pasco County Jail, to the Pasco County Courthouse for a scheduled court appearance. Upon arriving at the courthouse, the Plaintiff was placed in a holding cell exclusively for risk inmate but was not alone, one Timothy Burliegh, a 'Red Dot Inmate,' was placed in the holding cell with the Plaintiff. That while in the holding cell, Timothy Burliegh 'freed himself' from his restraights [sic] of handcuffs, black box, and belly chain, and proceeded to physically assault the Plaintiff who was unable to defend himself or to escape the aggravated assault but was beaten about his head and face for about 1 ½ minutes to 2 minutes before help arrived. By the above-cited Defendants failure to properly secure Timothy Burliegh and to perform their duties to put Timothy Burliegh into a separate cell, per their own Rules and Regulations Handbook, the Plaintiff sustained injuries to his head and face. [gross negligence].

Nature and Extent of Injuries: (1) blurred vision; (2) blackouts; (3) problems sleeping; (4) numbness and pressure with right ear; (5) hearing loss right ear; and (6) numbness in both arms when laying on my back or

---

[2]The Court cites the Plaintiff's statement of facts relevant to the claims against Defendants Bob White and State of Florida.

stomach.

That on February 4, 2005, as per orders from Dr. T. McKay, the Plaintiff's perscribed [sic] medication of Atenolol-Beta Blocker, and heart medicine was 'no longer available' per orders given to the nurse that morning. To further show complete control, Dr. T. McKay, moved the Plaintiff to Med II, more 'observation.' That on February 8, 2005, as per Dr. T. McKay, the Plaintiff's medication of Isosorbide Mononitrate for arteries and veins, vasodilator, was stopped. Then on February 11, 2005, that morning, Dr. T. McKay stopped the Plaintiff's blood pressure medication. By 11:00 p.m. that night, the Plaintiff was taken to Bayonet Point Hospital having a 2nd (Second) heart attack.

Nature and Extent of Injury: (1) serious bodily injury; (2) physically handicapped for life, and maimed; (3) an AICD installed; (4) a cost of ($80,000.00) eighty-thousand dollars every four (4) years, to replace the battery.

Relief requested:     The Plaintiff, in the above-cited case, seeks 'punitive damages' from the above-cited Defendants whether their actions were intentional and/or unintentional on the grounds of 'gross negligence, cruel and unusual punishment, serious bodily injury, and professional malpractice' in the sum of no lower than five (5)($5,000,000.00) million dollars, to no 'greater than' fifteen million, ($15,000,000.00).

(Dkt. 21 at 14-20) (footnote added).

**Defendant White**

Plaintiff's claims against Defendant White are premised on the failure of the Pasco County deputies ("PCD") to protect Plaintiff from Inmate Burleigh, and Defendant McKay's medical decision to stop some of Plaintiff's prescription medications. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.[3]  However, "[i]t is not . . .

---

[3]As a pretrial detainee, Plaintiff's cruel and unusual punishment claims sound properly in the Fourteenth Amendment right to due process of law rather than in the Eighth Amendment, but this is a distinction without a difference because the standard for violations of the Eighth Amendment apply to pretrial detainees through the due process clause. *See see Williams v. Limestone County, Ala.*, 198 Fed. Appx. 893, 896 n.3 (11th Cir. 2006); *Taylor v. Adams*, 221 F.3d 1254, 1257 n.3 (11th Cir. 2000); *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997).

every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) (citation omitted). *See also Zatler v. Wainwright,* 802 F.2d 397, 400 (11ᵗʰ Cir. 1986) ("It is well settled that a prison inmate has a constitutional right to be protected from the constant threat of violence and from physical assault by other inmates. However, '[t]his does not mean that the constitutional rights of inmates are violated every time a prisoner is injured. It would not be reasonable to impose such an absolute and clearly unworkable responsibility on prison officials'" (citations omitted)).[4]

"For liability purposes, a suit against a public official in his official capacity is considered a suit against the local government entity he represents," *see Owens v. Fulton County,* 877 F.2d 947, 951 n.5 (11th Cir. 1989), here the Pasco County Sheriff's Office.[5]  *See Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985); *Jones v. Cannon,* 174 F.3d 1271, 1293 n. 15 (11th Cir. 1999). "A governmental entity is not liable under [§] 1983, merely as a matter of respondeat superior, for constitutional injuries inflicted by its employees." *See Brown v. Neumann,* 188 F.3d 1289, 1290 (11th Cir. 1999) (citation omitted). A local government is, however, liable under § 1983 "when

---

[4]To be held liable under the Eighth Amendment for failing to prevent an attack from another inmate, a correctional official ["CO"] must be found to have known and recklessly disregarded "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer, supra* at 837. When officials become aware of threats to an inmate's health and safety, the Eighth Amendment proscription against cruel and unusual punishment imposes a duty to provide reasonable protection. *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1027 (11th Cir. 2001).

[5]Because Plaintiff is proceeding *pro se* and it is not clear from the record whether he is suing Defendant White in his individual capacity only, the Court will consider the claim as being asserted against Defendant White in both his official and individual capacities. *See Hobbs v. Roberts,* 999 F.2d 1526, 1528 (11ᵗʰ Cir. 1993) (finding that "[w]here the complaint is unclear on 'whether officials are sued personally, in their official capacity, or *both,*' courts must look to 'the course of the proceedings' which will 'typically indicate the nature of the liability sought to be imposed'" (emphasis in original) (citations omitted)).

execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978) (holding that liability of municipalities and other governmental entities under § 1983 is limited to instances of official policy or custom).

To attribute liability to Defendant White in his official capacity under § 1983, Plaintiff must demonstrate that Defendant White had an official policy or custom that was "the moving force of the constitutional violation." *Vineyard v. County of Murray, Ga.*, 990 F.2d 1207, 1211 (1993) (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)). Here, Plaintiff fails to identify with specificity any policies, customs, or procedures instituted by Defendant White that led to his injuries. In fact, Plaintiff asserts to the contrary, stating that Defendant White implemented a set of rules and regulations requiring that "red dot" inmates known to be prone to violence "be kept separate from all other inmates." *See* (Dkt. 22 at 5). According to Plaintiff, it was the deputies' failure to follow Defendant White's rules and regulations governing the management of "red dot" inmates that led to Plaintiff's injuries.

To the extent that Plaintiff's allegations may be read as an attempt to assert a claim against Defendant White predicated upon his supervisory position as the Sheriff of Pasco County, "[i]t is [] well established in this [c]ircuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Miller v. King*, 384 F.3d 1248, 1261 (11th Cir. 2004) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)), *vacated on other grounds*, 449 F.3d 1149 (11th Cir. 2006). Under §1983, supervisory liability occurs only when the supervisor personally participates in the alleged misconduct or when there is a causal connection between the supervising official's actions and the

6

alleged constitutional deprivation. *Cottone, supra* at 1360. Defendant White was not present when Inmate Burleigh attacked Plaintiff, and the complaint is entirely void of any facts that might be read to support an inference that a causal connection exists between Defendant White's conduct and Plaintiff's injuries. Further, Plaintiff does not assert that Defendant White directed the deputies to act unlawfully or that there was a history of widespread abuse at the PCJ that put Defendant White on notice that there was a need to correct the manner in which "risk inmates" such as Plaintiff were held at the court house pending an appearance before the trial court.

As to Plaintiff's claim that Defendant White subjected him to cruel and unusual punishment when Defendant McKay stopped Plaintiff's prescription medication, "deliberate indifference to a prisoner's serious illness or injury states a cause of action under §1983." *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976). To succeed on a claim of deliberate indifference to a serious medical need, Plaintiff must establish that: 1) he had an objectively serious medical need; 2) Defendant White was subjectively aware of facts from which an inference could be drawn that Plaintiff had a serious medical need; 3) Defendant White actually drew this inference; and 4) Defendant White made an objectively insufficient response to Plaintiff's serious medical need. *See Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).

Assuming, without finding, Plaintiff had a serious medical need, Plaintiff fails to allege facts which would indicate that Defendant White knew of Plaintiff's serious medical need and that he made an objectively insufficient response to that need. Likewise, Plaintiff fails to allege or demonstrate that Defendant White had an official policy or custom that was "the moving force of the constitutional violation." *Vineyard*, 990 F.2d at 1211. Moreover, Plaintiff fails to allege or demonstrate that Defendant White personally participated in the alleged unconstitutional conduct,

7

i.e., Defendant McKay's alleged denial of the prescription medication, and fails to demonstrate any causal connection between Defendant White and the alleged denial of the medication.

Since Defendant White did not participate in the alleged misconduct and did not intentionally and knowingly ignore indications that such misconduct might occur, he is not liable under § 1983. The Court concludes that allegations in the complaint are insufficient to support a § 1983 claim against Defendant White in either his official or individual capacity.

**Defendant State of Florida**

The Eleventh Amendment provides that: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "The Amendment not only bars suits against a state by citizens of another state, but also applies equally to suits against a state initiated by that state's own citizens." *Summit Medical Associates, P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999), *cert. denied*, 529 U.S. 1012 (2000).

While the text of the amendment does not explicitly so provide, the Supreme Court has held that the Eleventh Amendment serves as a jurisdictional bar to a suit against a state in federal court unless: (1) the state has explicitly consented to suit, thus waiving its sovereign immunity; or (2) Congress has specifically abrogated a state's Eleventh Amendment immunity. *Seminole Tribe of Florida v. Florida*, 517 U.S. 609 (1996). In *Zatler v. Wainwright*, the Eleventh Circuit found that Congress did not intend to abrogate a state's Eleventh Amendment immunity in §1983 damage suits, and Florida has not waived its sovereign immunity in such suits. 802 F.2d 397, 400 (11th Cir. 1986) (finding that the Secretary of Florida Department of Corrections was immune from suit in his official capacity where the § 1983 complaint alleged that prison officials failed to protect prisoner from

sexual assault) (citing *Gamble v. Fla. Dept. of Health and Rehab. Servs.*, 779 F.2d 1509, 1513-20

(11th Cir. 1986) (dismissing § 1983 complaint for lack of jurisdiction upon finding that Florida has

not waived its Eleventh Amendment sovereign immunity)).  It is clear that Florida has not waived

its Eleventh Amendment immunity from suit in federal court.  *See* §768.28(18), Fla. Stat. (2007).

**State law claims**

To the extent that Plaintiff raises state law claims against Defendants White and State of

Florida, the Court declines to exercise supplemental jurisdiction over them.  *See* 28 U.S.C.

§1367(c)(3)(District courts may decline to exercise supplemental jurisdiction over a state law

claim if the district court has dismissed all claims over which it has original jurisdiction).

**Conclusion**

For the foregoing reasons, the Court concludes that no relief could be granted against

these Defendants under any set of facts that could be proved consistent with the allegations in the

complaint. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The Court finds, therefore,

that Plaintiff's claims against Defendants White and State of Florida are subject to dismissal for

failure to state a claim for which relief may be granted.

Accordingly,  Plaintiff's claims against Defendants White and State of Florida are

**DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).  The Court declines to *sua sponte* certify that

a piecemeal appeal of the case is appropriate. *See* Fed. R. Civ. P. 54(b).

**DONE and ORDERED** in Tampa, Florida, on *September* 27^tz^ _____, 2007.

JAMES D. WHITTEMORE
United States District Judge

Copy to: *Pro Se* Plaintiff